# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MICHELLE ANDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-16-865-STE** |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of the Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.1** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the
final decision of the Commissioner of the Social Security Administration denying Plaintiff's
applications for supplemental security income and disability insurance benefits under the
Social Security Act. The Commissioner has answered and filed a transcript of the
administrative record (hereinafter TR. _____). The parties have consented to jurisdiction
over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on
the Court's review of the record and the issues presented, the Commissioner's decision is
**REVERSED and REMANDED** for further administrative development.

---

1 Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d)
of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting
Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken
to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act,
42 U.S.C. § 405(g).

## I.  PROCEDURAL BACKGROUND

Plaintiff's applications for supplemental security income and disability insurance benefits were denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 13-31). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.  THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 3, 2013, the alleged disability onset date. (TR. 15). At step two, the ALJ determined Ms. Anderson had the following severe impairments: depression, anxiety, migraines, and bipolar disorder. (TR. 15). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 25).

At step four, the ALJ found that Plaintiff could not perform her past relevant work. (TR. 30). The ALJ further concluded that Ms. Anderson had the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: work must be limited to simple, routine, and

repetitive tasks; occasional interaction with co-workers, supervisors, and public; and free from assembly-line rate pace.

(TR. 26).

Based on the finding that Ms. Anderson could not perform her past relevant work, the ALJ proceeded to step five. There, the ALJ presented several limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 58-59). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 59). The ALJ adopted the testimony of the VE and concluded that Ms. Anderson was not disabled based on her ability to perform the identified jobs. (TR. 31).

## III.   ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred at steps two and four and in the consideration of a treating psychologist's opinion.

## IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh

the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805
F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.    STEPS TWO AND FOUR

Plaintiff's challenges to the ALJ's findings at steps two and four are intertwined,
necessitating consideration of the errors concurrently. Plaintiff alleges she is disabled due
to problems with her back, migraine headaches, depression, anxiety, and bipolar disorder.
At step two, the ALJ concluded that Plaintiff's back impairment was not severe, but that
the other impairments were severe. (TR. 15, 25). Ms. Anderson argues: (1) the ALJ's step
two determination was flawed and (2) the ALJ failed to consider all of her impairments in
formulating the RFC at step four. The Court finds no error at step two and error at step
four with regard to the migraine headaches.

### A.    Step Two

Citing *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2003), Ms. Anderson challenges
the ALJ's step two findings, but her reliance on *Wells* is misplaced.

In *Wells*, the ALJ had made a step-two finding that the plaintiff's mental
impairments were not severe. *Wells*, 727 F.3d at 1068. The ALJ then stated: "[t]hese
findings do not result in further limitations in work-related functions in the [RFC] below."
*Id.* at 1069 (brackets in original). The Tenth Circuit Court of Appeals stated that the ALJ's
language "suggest[ed]" that he may have relied on his step-two findings to conclude that
the plaintiff had no limitations at step four based on mental impairments. *Id.* at 1069. If
so, the Court stated, such a conclusion would be considered "inadequate under the

regulations" because the RFC analysis at step four required "a more detailed assessment" "describing how the evidence *supports each conclusion*, citing specific medical facts." *Id.* (emphasis in original).

Ms. Anderson contends that the ALJ erred at step two by making findings more egregious than the step-two findings condemned in *Wells*. Plaintiff states: "Worse yet, in contrast to the step-two statement that *Wells* implied would be inadequate, at step two in Ms. Anderson's case the ALJ made *no statement whatsoever* regarding all severe or non-severe impairments in her RFC which is error." (ECF No. 16:4-5). Plaintiff also states: "[T]he ALJ failed to follow the regulations in reaching her determination about whatever she thought about Ms. Anderson's mental and physical limitations at step two of the sequential evaluation." (ECF No. 16:5). These statements suggest that the Plaintiff believes *Wells* requires some sort of finding at step-two regarding the impact of the impairments at step four. But such an assumption overstates the ALJ's duty at step two, and misses the import of the holding in *Wells*.

At step two, the ALJ's duty is limited to making a determination of whether the claimant suffers from a severe impairment or combination of impairments. *See Bowen v. Yuckert,* 482 U.S. 137, 140-141 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ complied with this duty, finding that Ms. Anderson suffered from severe depression, migraine headaches, anxiety, and bipolar disorder. *See* TR. 15. *Wells* did not require the ALJ to make a step two finding beyond severity. Instead, the Court found error "to the extent the ALJ relied on his finding of non-severity as a substitute for [an] adequate RFC

analysis[.]" *Wells*, 727 F.3d at 1071. Thus, the Court rejects Plaintiff's allegation of error to the extent that it is premised on an improper findings under *Wells* at step two.[2]

**B.    Step Four**

As stated, under *Wells*, an ALJ may not substitute his findings of non-severity in lieu of a more thorough discussion of how the impairments may result in work-related limitations at step four. *Id.* at 1068-1071. Indeed, *Wells* states: "a conclusion that the claimant's mental impairments are non-severe at step two does not permit the ALJ simply to disregard those impairments when assessing a claimant's RFC and making conclusions at steps four and five." *Id.* at 1068-1069. Plaintiff relies on this language in *Wells* to argue that the ALJ erred by failing to include any limitations in the RFC stemming from her migraine headaches, her mental impairments, and a lower back impairment. *See* (ECF No. 16:4-5). With respect only to the migraine headaches, Plaintiff's argument has merit.

First, with regard to her mental impairments and lower back impairment, Plaintiff only argues that the ALJ erred in failing to include work-related limitations from these impairments in the RFC. *See* ECF No. 16:3 ("Although the ALJ found that Ms. Anderson [sic] mental conditions were severe impairments, she failed to include their symptoms

_____

[2]  Plaintiff also references an impairment involving back pain form a former L4-5 fusion and then states that this impairment "obviously satisfies the de minimus severity requirement [at step two]." (ECF No. 16:5). To the extent that Ms. Anderson suggests that the ALJ had erred in failing to conclude that the back impairment was "severe," any such error would be harmless. *Brescia v. Astrue,* 287 F. App'x 626, 629 (10th Cir. 2008) ("Once an ALJ has found that a claimant has at least one severe impairment, a failure to designate another disorder as 'severe' at step two does not constitute reversible error . . . .").

and limitations in the RFC."); ECF No. 16:4 ("The ALJ failed to include any limitations in [sic] RFC for all of the severe impairments she did find, namely the headaches and mental impairments"); ECF No. 16:5 (statement that the ALJ "obviously" failed to consider Plaintiff's non-severe back impairment because the RFC found she could perform work at all exertional levels).

But the ALJ's finding that a medically determinable impairment satisfies the "*de minimis*" threshold at step two simply means that the sequential analysis proceeds to step three; it "is not determinative of the claimant's RFC" and "does not account for the ALJ's assessment, at step four, of a claimant's ability to work at given exertion level." *Johnson v. Berryhill*, ___ F. App'x ___, 2017 WL 603830, at *3 (10th Cir. 2017) (citing *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); 20 C.F.R. § 404.1520(e)). The critical "question is not whether the RFC recounts or lists the 'severe' impairments found at step two, but whether the RFC accounts for the work-related limitations that flow from those impairments." *Cavalier v. Colvin*, 2014 WL 7408430, at *2 (N.D. Okla. Dec. 30, 2014).

Here, Plaintiff does not explain how her mental impairments or her lower back impairment would affect her ability to work. Thus, the Court rejects Plaintiff's step four argument as it pertains to these particular impairments. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987) (the claimant has the initial burden of establishing a disability in the first four steps of this analysis); *McAnally v. Astrue*, 241 F. App'x. 515, 518 (10th Cir. 2007) (affirming in part because "with regard to [her severe impairments], the claimant

has shown no error by the ALJ because she does not identify any functional limitations that should have been included in the RFC assessment or discuss any evidence that would support the inclusion of any limitations" (citation and internal brackets omitted)); *Kirkpatrick v. Colvin*, ___ F. App'x. ___, 2016 WL 5920745, at *3 (10th Cir. 2016) (rejecting Plaintiff's argument regarding the alleged omission of certain limitations in an RFC because "[plaintiff] doesn't explain how these restrictions fail to account for his [limitations] . . . [a]nd it isn't our obligation to search the record and construct a party's arguments."). However, as argued by Ms. Anderson, the Court concludes that the ALJ did err at step four in her consideration of Plaintiff's migraine headaches.

In the decision, the ALJ found that the migraine headaches were severe, and noted 21 instances where Ms. Anderson had sought related treatment, including treatment at the emergency room. (TR. 16-24). And at the hearing, Plaintiff testified that she had suffered from migraine headaches off and on since she was 18 years old. (TR. 46). According to Ms. Anderson, when she has a migraine, she is sensitive to light and sound and the headaches sometimes cause her to vomit. (TR. 46). Ms. Anderson explained that at times, she is able to treat the migraines with an Imitrex shot, which allows her to then "go on with her day." (TR. 46, 56). However, Plaintiff also explained that one headache might last for 3-4 days, which caused her to be stuck in bed, unable to do anything because of the pain. (TR. 46, 56). If the migraine lasted for more than 3 days, Plaintiff testified that she had to go the hospital for an intravenous treatment of what she

described as a "migraine cocktail." (TR. 46). On average, Ms. Anderson stated that she suffered migraine headaches approximately 18 days per month. (TR. 47).

Despite the numerous medical records and Plaintiff's testimony, the ALJ failed to discuss the impact of the migraines in the RFC determination or in her credibility analysis. Following a nearly 10-page single-spaced recitation of the medical evidence, the ALJ evaluated the opinion evidence and Ms. Anderson's credibility. (TR. 16-25).

With respect to the opinion evidence, the ALJ stated:

> As for the opinion evidence, the undersigned gives great weight to the opinions by the DDS Medical Consultants at Exhibits 1A, 2A, and 7A and 8A. The opinion by the psychologist at Exhibit 8F is given very little weight as he had only treated her since July 2014, and he completed a form and this psychologist's opinion contrasts sharply with other evidence of record, which renders it less persuasive.

(TR. 29). Despite the plethora of medical evidence concerning Plaintiff's migraine headaches, which the ALJ acknowledged, she never rendered an opinion regarding the medical evidence as it related to this impairment.

And with respect to Plaintiff's credibility, the ALJ acknowledged Ms. Anderson's testimony regarding the length and frequency of the migraines, as well as how the headaches affected her day to day. (TR. 28). Ultimately, however, the ALJ found Plaintiff less than credible for the following reasons:

- She lived alone,

- She took care of three cats,

- She went out alone and could drive,

- She had gone on long-distance biking trips,

- She had an online business,

- She had engaged in some work activity,

- She had received her psychotropic medication from a primary care physician, and not a psychiatrist,

- She had received "various forms of treatment" which "ha[d] been generally successful in controlling [her] symptoms,"

- She was noted to be neat and clean in appearance and grooming at a mental status exam, and

- She had an objectively "normal" neurologic examination.

(TR. 29). The only rationale which could be arguably tied to Plaintiff's claims regarding her migraine headaches was the ALJ's statement regarding successful treatment. Although the ALJ noted that treatment had been generally successful in controlling some symptoms, the ALJ never identified the symptoms to which she was referring and the Court will not engage in a post-hoc analysis and speculate regarding the missing analysis. *See Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[T]he district court may not create post hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.")

It was error for the ALJ to fail to expressly consider: (1) the evidence regarding Plaintiff's migraines as documented by her frequent contact with physicians and (2) Plaintiff's testimony regarding the impact of the impairment. *See Winfrey v. Chater*, 92 F.3d 1017, 1021 (10th Cir. 1996) (holding it is error for an ALJ to fail to consider factors relevant to the pain analysis which are supported by the record); *Clifton v. Chater*, 79

F.3d 1007, 1009 (10th Cir. 1996) (ALJ must "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").

In this case, the ALJ's error cannot be considered harmless because the probative evidence, together with the VE's testimony, supports a conclusion that Plaintiff's migraines could preclude her from performing the jobs identified by the VE.[3] The VE testified that if a hypothetical claimant had to miss work for four days per month due to frequent doctor's visits, side effects from medications, and migraines, that the jobs she had identified at step five would be precluded. (TR. 60). As a result, the Court concludes that the ALJ erred in her consideration of Plaintiff's migraine headaches at step four in formulating her RFC.

## VI.    THE ALJ'S EVALUATION OF A TREATING PSYCHOLOGIST'S OPINION

As alleged by Ms. Anderson, the ALJ committed legal error in her evaluation of a treating psychologist.

### A.    ALJ's Duty to Assess a Treating Physician's Opinion

An ALJ must follow a particular analysis in evaluating a treating physician's opinion. First, the ALJ has to determine, then explain, whether the opinion is entitled to controlling weight. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). An opinion is entitled to controlling weight if it is "well supported by medically acceptable clinical and laboratory

---

[3]   Harmless error analysis "'may be appropriate to supply a missing dispositive finding ... where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.'" *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005) (*quoting Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

diagnostic techniques and is consistent with the other substantial evidence in the record."

*Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) (citation and internal quotation marks omitted). "But if the ALJ decides that the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* (internal quotation marks omitted).

In doing so, the ALJ must assess the opinion under a series of factors which include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1331-1332 (internal quotation marks omitted); *Krausner v. Astrue,* 638 F.3d 1324, 1330 (10th Cir. 2011); 20 C.F.R §§ 404.1527 & 416.927.

Ultimately, an ALJ "must give good reasons for the weight assigned to a treating physician's opinion," and "[t]he reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reason for that weight." *Allman*, 813 F.3d at 1332. If the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

## B.    Opinion from Plaintiff's Treating Psychologist

On July 3, 2014, psychologist Steven Sternlof began treating Plaintiff for her mental impairments. (TR. 900). On November 3, 2014, Dr. Sternlof completed a form which assessed Plaintiff's mental capacity. (TR. 898-900). Dr. Sternlof diagnosed Plaintiff with bipolar disorder and severe depression. (TR. 898). The psychologist based his opinion on direct observation, patient reporting, functional testing, his own experience, and therapy records. (TR. 900). According to Dr. Sternlof, Ms. Anderson "exhibit[ed] a debilitating level of distress and significant problems in psychological functioning that impair[ed] her ability to work or interact with others." (TR. 899). In terms of specific work-related limitations, Dr. Sternlof assessed Plaintiff's abilities in 20 areas and rated Plaintiff as suffering "marked" and "extreme" limitations. (TR. 898-899). A level of "marked" indicated "limitations functioning in the areas for two-thirds of an eight hour workday." (TR. 898). A level of "extreme" indicated a "major limitation with "no useful ability to function." (TR. 898).

Dr. Sternlof found that Plaintiff was "markedly" limited in her ability to:

- carry out very short and simple instructions,

- make simple, work-related decisions,

- ask simple questions or request assistance, and

- be aware of normal hazards and take appropriate precautions.

(TR. 898-899).

Dr. Sternlof found that Ms. Anderson had "extreme" limitations in her ability to:

- carry out detailed instructions,

- maintain attention and concentration for extended periods,

- perform activities within a schedule, maintain regular attendance, and be punctual within customary limits,

- sustain an ordinary routine without special supervision,

- work in coordination with or in proximity to others without being distracted by them,

- complete a normal workday or workweek without interruptions from psychologically based symptoms,

- perform at a consistent pace with a one-hour lunch break and two 15-minute rest periods,

- interact appropriately with the general public,

- accept instructions and respond appropriately to criticism from supervisors,

- get along with coworkers or peers without distracting them or exhibiting behavioral extremes,

- maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness,

- respond appropriately to changes in the work setting,

- travel in unfamiliar places or use public transportation, and

- set realistic goals or make plans.

(TR. 898-899).

## C.     The ALJ's Consideration of Dr. Sternlof's Opinion

The ALJ summarized Dr. Sternlof's entire opinion, but ultimately gave it "very little weight." (TR. 25, 29). As discussed above, the ALJ gave a brief explanation regarding her treatment of the entire medical record, including Dr. Sternlof's opinion, which was provided in Exhibit 8F. (TR. 29). The ALJ stated:

> As for the opinion evidence, the undersigned gives great weight to the opinions by the DDS Medical Consultants at Exhibits 1A, 2A, and 7A and 8A. The opinion by the psychologist at Exhibit 8F is given very little weight as he had only treated her since July 2014, and he completed a form and this psychologist's opinion contrasts sharply with other evidence of record, which renders it less persuasive.

(TR. 29).

Plaintiff alleges the ALJ erred in evaluating Dr. Sternlof's opinion because the ALJ: (1) improperly credited the opinions of the agency physicians over Dr. Sternlof and (2) failed to evaluate Dr. Sternlof's opinion utilizing the proper framework. (TR. 16:8-10). The latter argument has merit.

### Agency Physician Opinions

At issue are four opinions from state agency medical consultants which were rendered during the initial and reconsideration levels of evaluating Plaintiff's applications for benefits. These opinions are found in the record at Exhibits 1A, 2A, 7A, and 8A. *See* TR. 62-81, 86-107. In Exhibits 1A and 2A, Dr. Herbert Meites concluded that Plaintiff's physical impairments were not severe. *See* TR. 65, 75. In Exhibits 7A and 8A, Dr. Luther Woodcock affirmed Dr. Meites findings and stated that Plaintiff's physical impairments were not severe. *See* TR. 89-90, 100-101. In the decision, the ALJ summarized the

findings from both physicians as well as the basis for their findings of non-severity. (TR. 19-20). As stated, the ALJ accorded "great weight" to these opinions. (TR. 29).

Ms. Anderson takes issue with the fact that the ALJ granted "great weight" to the agency opinions while rejecting Dr. Sternlof's opinion. *See* ECF No. 16:8 ("[The ALJ] grants great weight to the agency doctors and rejects the treating physician in the process[.]"). In support, Plaintiff argues: (1) an inconsistency exists between the agency physicians' findings and the ALJ's opinion and (2) improper reliance on agency opinions to discount Dr. Sternlof.[4] Neither argument has merit.

First, Ms. Anderson argues that the ALJ was inconsistent in adopting the agency physicians' opinions of non-severity, but also concluding at step two that Plaintiff suffered from severe impairments. *See* ECF No. 16:8 ("The agency doctor's all, every one of them, found no severe condition and the ALJ noted that in her decision. Substantial evidence does not support an ALJ's finding of severity for numerous medical conditions and then also grant great weight to doctor's whose opinions disagree with those same findings."). The Court concludes that no such inconsistency exists.

The problem with Plaintiff's argument is that it confuses the agency physicians' findings regarding physical versus mental impairments. In addition to the findings on

---

[4] Plaintiff also simply states that "the agency opinions were unsupported by the evidence of record" and "the evidence so overwhelmingly mitigates 180 degrees in the other direction." (ECF No. 16:8-9). But the Court will not consider the argument as Ms. Anderson offers nothing else in support. *See Phillips v. Calhoun*, 956 F.2d 949, 953 (10th Cir. 1992) (declining to consider appellate position that was not "minimally supported by legal argument or authority").

physical impairments, which the agency doctors deemed non-severe; Exhibits 1A, 2A, 7A, and 8A also included findings that Plaintiff suffered from a severe mental impairment. *See* TR. 65, 75, 90, 101. *These* findings *are* consistent with those ultimately found to exist by the ALJ. *See* TR. 15 (finding "severe" mental impairments but no severe physical impairments). Thus, no inconsistency existed when the ALJ gave the agency opinions "great weight" and the Court rejects Plaintiff's contrary argument.

Next, Plaintiff argues that the ALJ improperly relied on agency opinions as a basis for rejecting Dr. Sternlof's opinion. Plaintiff states: "Using [agency] opinions as support for the ALJ's errant statement that this treating opinion "contrasts sharply" with the agency opinions is ridiculous[.]" (ECF No. 16:8). According to Plaintiff, "of course" the agency opinions conflict with Dr. Sternlof's opinion because: (1) "they found zero severity" and (2) "[t]heir opinions were bought and paid for by their employer, the Commissioner." (ECF No. 16:8). Neither reason has merit.

First, as discussed, no conflict exists between the agency opinions and Dr. Sternlof's opinion regarding the severity of a mental impairment—both found that a severe mental impairment existed. *See* TR. 65, 75, 90, 101, 898-900. Second, Plaintiff correctly states that the ALJ accorded Dr. Sternlof's opinion "very little weight," in part, because the opinion "contrast[ed] sharply with the other evidence of record[.]" TR. 29. But in doing so, the ALJ did not identify the agency opinions as the evidence which had contrasted sharply. *See* TR. 29.

**The ALJ's Failure to Properly Evaluate Dr. Sternlof's Opinion**

As stated, because Dr. Sternlof was Plaintiff's treating psychologist, the ALJ had to evaluate the opinion utilizing a specific procedure. First, the ALJ had to determine whether the opinion was entitled to "controlling weight." *Allman*, 813 F.3d. at 1331. If not, the ALJ had to consider whether the opinion should be rejected altogether or assigned some lesser weight." *Id.* Ultimately, the ALJ had to "give good reasons" for the weight assigned to Dr. Sternlof's opinion," and "[t]he reasons must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reason for that weight." *Id.* at 1332.

As stated, the ALJ accorded Dr. Sternlof's opinion "very little weight" because the psychologist:

- had only treated Plaintiff for 4 months when he rendered the opinion,

- had "completed a form," and

- the opinion "contrast[ed] sharply with the other evidence of the record[.]"

(TR. 29). Ms. Anderson alleges the ALJ failed to: (1) accord Dr. Sternlof's opinion controlling weight, (2) evaluate the opinion utilizing the regulatory factors, and (3) provide "good reasons" for the amount of weight he ultimately afforded the opinion. (ECF No. 16:9-12). Only the third argument has merit.

Regarding controlling weight, Ms. Anderson properly states that an opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence

in the record." (ECF No. 16:10) (citing *Watkins v. Barnhart*, 350 F.3d 1297 (10th Cir. 2003). According to Plaintiff, "Here, the treating opinion was consistent with well accepted standards in medicine. It was also not inconsistent with other proper evidence of record." (ECF No. 16:11). The Court presumes that these statements are Plaintiff's attempt to argue that the ALJ erred in declining controlling weight to Dr. Sternlof's opinion. But Ms. Anderson has offered nothing in support of her allegations, and the Court will not make the argument for her. *See Kirkpatrick v. Colvin*, ___ F. App'x. ___, 2016 WL 5920745, at *3 (10th Cir. 2016) ("it isn't [the Court's] obligation to search the record and construct a party's arguments.").

Next, in arguing that the ALJ failed to "properly follow the six (6) factors," the ALJ focuses two factors--the degree to which the physician's opinion is supported by relevant evidence and the consistency between the opinion and the record as a whole. *See* 20 C.F.R §§ 404.1527(c) & 416.927(c). In support of this argument, Plaintiff states that Dr. Sternlof's opinion was well-supported and "only inconsistent with the non-severity agency opinions which were literally the essence of hogwash." (ECF No. 16:10). Plaintiff goes on to characterize the "nonseverity" opinions as "baloney" and reflecting "tomfoolery." (ECF No. 16:10). But no tomfoolery exists and indeed the Court is hard-pressed to see how Plaintiff could characterize the agency opinions as "baloney" when both the agency opinions *and* Dr. Sternlof concluded that Plaintiff suffered from a severe impairment, as discussed. *See supra*. And after attacking the agency opinions, Plaintiff simply states: "Dr. Sternloff [sic] believed that the headaches made Ms. Anderson unable to work." (ECF No.

16:10). The Court has no idea why Plaintiff has offered this statement, as it seems unconnected to her arguments regarding controlling weight or failure to "properly follow the six (6) factors" and it is simply untrue—Dr. Sternlof never rendered an opinion regarding Ms. Anderson's headaches. *See* TR. 898-900.

Finally, Plaintiff argues that the ALJ erred in her evaluation of Dr. Sternlof's opinion because the ALJ failed to provide "good reasons" for her treatment of the opinion, as required by the law. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) ("Under the regulations, the agency rulings, and our case law, an ALJ must "give good reasons in [the] notice of determination or decision" for the weight assigned to a treating physician's opinion) (citing 20 C.F.R. § 404.1527(d)(2)). Plaintiff is correct.

As stated, the ALJ gave no weight to the "marked" and "extreme" limitations that Dr. Sternlof found. *Compare* TR. 898-900 (Dr. Sternlof's opinion) *to* TR. 26 (RFC determination). As a basis for her treatment of Dr. Sternlof's opinion, the ALJ gave three reasons:

- the psychologist had only treated Plaintiff for 4 months when he rendered the opinion,

- he had "completed a form," and

- the opinion "contrast[ed] sharply with the other evidence of the record[.]"

(TR. 29).

First, although the ALJ was entitled to rely on the length of the treatment relationship between Dr. Sternlof and Ms. Anderson,[5] the ALJ was not entitled to rely on the same as a basis for rejecting Dr. Sternlof's opinion. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (noting that length of a treatment relationship "may be a valid reason not to accord [a treating physician's] findings the conclusive weight of a treating medical-source opinion, but . . . it is not by itself a basis for rejecting them[.]").

Second, the ALJ was not entitled to reject Dr. Sternlof's opinion simply because it was written on a "form." *See Andersen v. Astrue*, 319 F. App'x 712, 724-725 (10th Cir. 2009) (ALJ's discounting of treating physician's opinion simply because it was rendered on a "form" was not a "good reason" for rejecting the opinion).

Finally, although the ALJ rejected Dr. Sternlof's opinions because the opinion "contrast[ed] sharply with the other evidence of the record," the ALJ failed to identify the evidence that Dr. Sternlof's opinion had contrasted with. As a result, this rationale is not a "good reason" on which to reject Dr. Sternlof's opinions. *See Langley v. Barnhart*, 373 F.3d 1116, 1122-24 (10th Cir. 2004) (although the ALJ rejected a treating physician's opinion by providing a "facially valid" reason, stating that the opinion was not consistent with other evidence of record, the rationale was not supported by the record "[b]ecause the ALJ failed to explain or identify what the claimed inconsistencies were" to allow for meaningful review).

---

[5]   *See* 20 C.F.R. §§ 404.1257(c) & 416.927(c).

**VII.    SUMMARY**

In assessing Plaintiff's RFC, the ALJ erred failing to consider the functional effects of Plaintiff's migraine impairments. Additionally, the ALJ erred in evaluating the opinions from treating psychologist Dr. Sternlof. These errors warrant remand for further consideration of the functional effects of Plaintiff's migraine headaches and Dr. Sternlof's opinions.

**ORDER**

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge **REVERSES** the Commissioner's decision and **REMANDS** for further administrative proceedings consistent with this opinion.

ENTERED on April 21, 2017.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE